UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
(MIAMI, DIVISION)

In re:                                              :     CASE NO.: 15-31296-AJC
                                                    :
SAMCO GLOBAL ARMS, INC.,                            :     CHAPTER 7
                                                    :
         Debtor.                                    :
_____/

**CHAPTER 7 TRUSTEE'S MOTION TO SURCHARGE SALE PROCEEDS
OF PERSONAL PROPERTY OF THE DEBTOR PURSUANT TO 11 U.S.C. §506(c)**

COMES NOW the Chapter 7 Trustee, Robert A. Angueira, and files this *Motion Surcharge Sale Proceeds of Personal Property of the Debtor Pursuant to 11 U.S.C. §506(c)* and would state as follows:

### Background

1.      The Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code on December 7, 2015 (the "***Petition Date***") and Robert A. Angueira has been appointed to serve as Chapter 7 Trustee (the "***Trustee***").

2.      The Debtor formerly operated as a wholesaler of firearms, with its principal place of business located at 4225 NW 72 Ave., Miami, FL 33166. Upon the Trustee's appointment to this case, the Trustee secured the warehouse property at 4225 NW 72 Ave., Miami, FL 33166, which contained the Debtor's substantial inventory of firearms and related goods..

3.      Along with this Motion, the Trustee is filing a separate Motion to sell substantially all of the Debtor's assets free and clear of all liens, claims and encumbrances pursuant to 11 U.S.C. §§363(b) and (f) (the "***Sale Motion***"). The Sale Motion contemplates the sale of a substantial firearms related inventory (described in **Exhibit 1-A** to the Sale Motion), a smaller lot of non-firearms related personal property of the Debtor (described in **Exhibit 1-B** to

the Sale Motion), and certain intellectual property belonging to the Debtor (described in **Exhibit 1-C** to the Sale Motion). The assets described in **Exhibit 1-A, 1-B** and **1-C** to the Sale Motion shall be collectively referred to as the "*Assets*."

4.  Based upon the Trustee's review of the Official Records of Miami-Dade County, Florida; the Florida Secured Transactions Registry; and the Claims Register in this case; and investigation into the financial affairs of the Debtor, the following entities were having claims or liens against the Assets (arranged in order of priority) which the Trustee seeks to surcharge:

  a. Judgment in favor of Jaca Business Corporation, in the amount of $296,768.90 dated December 8, 2015 and recorded in the Public Records of Miami-Dade County, Florida at Book 29881, Page 1079 (the "*Jaca Judgment*"). The Jaca Judgment is based a security interest as described in Jaca's UCC-1, filed with the Florida Secured Transaction Registry on April 25, 2014 (Record #201401300160). Upon information and belief, Jaca provided no consideration or new value to the Debtor upon the recordation of the UCC-1 in 2014.

  b. Judgment in favor of Sauce, Inc., in the amount of $465,971.39 dated December 8, 2015 and recorded in the Public Records of Miami-Dade County, Florida at Book 29881, Page 3328 (the "*Sauce Judgment*"). The Sauce Judgment is based a security interest as described in Sauce's UCC-1, filed with the Florida Secured Transaction Registry on April 25, 2014 (Record #201401300179). Upon information and belief, Sauce provided no consideration or new value to the Debtor upon the recordation of the UCC-1 in 2014.

### Relief Requested

5.  The Trustee requests that the Court approve a surcharge against the proceeds to be paid to lienholders identified in Paragraphs 4 above from the sale of the Assets, the amount of fees and costs incurred by the Trustee and the Trustee's professionals in connection with the sale of the Assets.

6.  The surcharge should be allowed to cover five (5) categories of fees: (a) the Trustee's statutory fees and costs; (b) all administrative expenses for rent, insurance, and utilities incurred by the Estate; (c) the Auctioneer's 10% buyer's premium, as provided for in the Court's

Order Authorizing Employment of Auctioneer [D.E. 34 at ¶2(a)], due to the fact that the Auctioneer has procured a bidder whose offer to purchase the assets has been brought before this Court by way of a Motion to Sell; (d) the Trustee's attorney's fees and costs; and (e) the Trustee's accountant's fees and costs.

7. The Trustee does not yet know whether the secured creditors will ultimately consent to the sale, and as such the Trustee does not yet know the amount of the Trustee's attorney's fees and other administrative expenses which will be necessary to effectuate an orderly liquidation of assets of this Estate (or the accountant's fees, if they are needed to testify at evidentiary hearings to consider any contested matters).[1] The exact amount of all fees covered by such a surcharge would be set forth in separate fee applications which would be filed with the Court, and subject to Court review and approval.

A.     **Surcharge**

8. Under the Bankruptcy Code, a Trustee can:

> [R]ecover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property, to the extent of any benefit to the holder of such claim … [.]

11. U.S.C. §506(c)

9. This section allows a trustee to recover the post-petition expenses associated with the preservation or disposition of property of the estate from either the collateral or the benefitted secured creditor. In re JKJ Chevrolet, Inc., 26 F.3d 481, 483 (4th Cir. 1994). The purpose of the provision is to prevent a windfall to a secured creditor at the expense of the estate as it would be unfair for unsecured creditors and the debtor's estate to be burdened with costs that only benefit

---

[1] For example, the current insurance premiums are $2,650.02 per month, and the administrative rent is over $8,000.00 per month. If litigation regarding the sale were to span several months, the administrative rent claims and insurance claims (amongst other claims subject to the surcharge) would be substantially higher.

3

a secured party and its collateral. Id. (internal citations omitted).

10. In order for an estate to be compensated under § 506(c), a movant must show that the: (1) the expenditure was necessary; (2) the amount expended was reasonable; and (3) the creditor benefited from the expenditure. In re Spa at Sunset Isles Condominium Ass'n, Inc., 454 B.R. 898, 908-909 (Bankr. S.D. Fla. 2011) (internal citations omitted).

**(i)    Necessity**

11. "Necessity" is satisfied upon a showing that the expense was unavoidable to preserve or dispose of the collateral or increase its value. See e.g. Rifken v. CapitalSource Finance, LLC (In re Felt Manufacturing Co., Inc.), 402 B.R. 502, 523 (Bankr. D. N.H. 2009) ("To recover a 'necessary' expense, each item must (1) have been incurred to preserve or dispose of the secured creditor's collateral and (2) must have been necessary under the circumstances.") (internal citations omitted).

12. The costs and expenses of legal and other professional services incurred in connection with marketing and selling the Assets are necessary and entitled to surcharge. Courts have found "necessary" expenses sought by the Trustee, including those that are inextricably tied to the preservation and disposal of a secured creditor's collateral: auctioneer fees or sales professional's fees; advertising and marketing costs; maintenance and repair costs. See Matter of Briscoe Enterprises, Ltd., II, 994 F.2d 1160 (5th Cir. 1993) (court surcharged secured creditor for the costs and expenses of appraiser, architect, and marketing consultant as necessary under § 506(c)); Matter of Senior-G & A Operating Co., Inc., 957 F.2d 1290 (5th Cir. 1992) (court held that maintenance and repair costs expended were necessary for the disposition of the collateral under § 506(c)); Butler v. Baybank Middlesex, 169 B.R. 484, (D. Mass. 1994) (court approved fees for administrative tasks under § 506(c)); In re MMS Builders, Inc., 101 B.R. 426 (D.N.J.

1989) (court approved auctioneer fees under § 506(c)); Matter of Iberica Mfg., Inc., 180 B.R. 707 (Bankr. D. P.R. 1995) (trustee's request for costs associated with sale of property were granted).

13.     Like the above examples, the professional fees incurred by the estate arise from, and are inextricably tied to, the expenses and costs of marketing, and disposing of the Assets. An overwhelming portion of the Trustee's attorney's fees from the Petition Date and through the sales were incurred for the specific purposes of preserving, marketing, and disposing of the Assets. Based on the foregoing, a large portion of the professional fees incurred by the estate were "necessary" to market and dispose of the Assets and increased the sale price and the ultimate value to the Estate.

14.     If the lienholders identified above had instead obtained relief from the automatic stay and foreclosed on the Assets, or sought to enforce their lien rights in the Assets under state law, the lienholders would have expended funds and resources in prosecuting the foreclosure or otherwise enforcing their liens, and given the significant expense and delays experienced in such proceedings, the Trustee submits that a bankruptcy sale expedited the process that the lienholders would otherwise have to go through in order to sell the Property.

(ii)     **Reasonableness**

15.     Some courts have measured the "reasonableness" of a surcharge by measuring it against the benchmark of the amount that would have been incurred by the secured creditor in foreclosing on its collateral. See In re Felt Mfg. Co., Inc., 402 B.R. at 523 ("Generally, reasonableness under § 506(c) is measured against a benchmark of the amount of costs and expenses that the secured creditor would have incurred by foreclosing on the property on its own behalf.") (internal citations omitted); see also, In re Toy King Distributors, Inc., 256 B.R. 1

5

(Bankr. M.D. Fla. 2000) (noting that the reasonableness of expenses sought to be surcharged is often measured with respect to the costs that would be incurred in foreclosing upon the collateral).

16. Yet other courts measure "reasonableness" based on the same standards for determining the reasonableness of professional compensation under §330. See In re Felt Mfg. Co., Inc., 402 B.R. 502 (Bankr. D. N.H. 2009) (the reasonableness of professional fees sought under §506(c) is determined by lodestar method) (internal citations omitted).

17. If the lienholders identified above pursued their remedies in state court proceedings to foreclose the liens, or otherwise sought enforcement of their lien rights in the Assets, the lienholders would have incurred both fees and costs associated with prosecuting a foreclosure action or other collection actions. Through the bankruptcy sale proceedings, the lienholders will be able to collect a liquidated sum from their collateral within an expedited timeframe, as compared to state court or other non-bankruptcy collections venues.[2]

18. Applying either measure of reasonableness, based on the foregoing this is a ratification of the reasonableness of the requested surcharge.

**(iii) Benefit to the Creditor**

19. To satisfy the third surcharge element, "benefit to the creditor," a movant must show that the secured creditor received over and above the benefit that the creditor would have realized without the expenditure and efforts by the estate professionals. See In re Crutcher Concrete Const., 218 B.R. 376, 380–81 (Bankr. W.D. Ky. 1998) ("To demonstrate such a benefit, the Trustee must show that the secured creditor received over and above that which it

---

[2] For example, average foreclosure proceedings in Florida currently take 2.4 years, see: http://articles.orlandosentinel.com/2012-04-12/business/os-foreclosures-orlando-20120412_1_foreclosure-activity-foreclosure-related-filings-darenblomquist

could have realized without the Trustee's intervention.")

20.   The lienholders cannot assert that they will not receive a substantial and identifiable benefit as a direct result of the estate professionals' efforts. Without the estate professionals' efforts, the Assets would not be sold until such time a chattel foreclosure proceeding was completed, during which time, interest would continue to accrue and defenses might have been asserted which would serve to further delay the proceeding as well as drive up the cost of the foreclosure. Alternatively, the Personal Property could have been abandoned by the Debtor and left unrecovered by any creditor. The Trustee anticipates that the lienholders will be paid a meaningful distribution from the proceeds of this sale. Thus, the third surcharge element is satisfied.

WHEREFORE, based upon the foregoing, Robert A. Angueira, Trustee, moves this Court for the entry of an Order: (i) granting this Motion; (ii) surcharging the proceeds to be paid to the Lienholders identified in this Motion from the sale of the Assets, the amount of fees and costs incurred in preserving and selling the Assets; and (iii) granting such other and further relief as is just and proper.

Dated and Respectfully Submitted on this 5 day of February, 2016.

ROBERT A. ANGUEIRA, P.A.
6495 S.W. 24th Street
Miami, Florida 33155
Tel. (305) 263-3328
Fax (305) 263-6335
e-mail rachel@rabankruptcy.com

By _____
RACHEL L. AHLUM
Florida Bar No. 0091291

CASE NO.: 15-31296-AJC

## CERTIFICATE OF SERVICE

I CERTIFY that a true and correct copy of the foregoing was served on this 5 day of February, 2016 to the secured creditors subject to the proposed surcharge as follows:

| Jaca Business Corporation<br>Attn.: Mr. Ronald J. Martin, President<br>5846 S. Flamingo Rd. #295<br>Cooper City, FL 33330 | Sauce, Inc.<br>Attn.: Mr. Ronald J. Martin, President<br>5846 S. Flamingo Rd. #295<br>Cooper City, FL 33330 |
|---|---|

I CERTIFY that a true and correct copy of the foregoing was served via the Notice of Electronic Filing on this 5 day of February, 2016, to:

- Robert A Angueira    trustee@rabankruptcy.com, fl79@ecfcbis.com; tassistant@rabankruptcy.com; lisa@rabankruptcy.com; lillian@rabankruptcy.com

- Marko Cerenko    mcerenko@klugerkaplan.com

- Allison R Day    aday@gjb-law.com, gjbecf@gjb-law.com; scomer@gjb-law.com ; hburke@gjb-law.com; ecastellanos@gjb-law.com

- Heather L Harmon    HHarmon@gjb-law.com, gjbecf@gjb-law.com;scomer@gjb-law.com;ecastellanos@gjb-law.com

- Office of the US Trustee    USTPRegion21.MM.ECF@usdoj.gov

- Eric J Silver    esilver@stearnsweaver.com, bank@stearnsweaver.com; rross@stearnsweaver.com; larrazola@stearnsweaver.com; cgraver@stearnsweaver.com

- David R. Softness    david@softnesslaw.com, mari@softnesslaw.com; sam@softnesslaw.com; david@ecf.inforuptcy.com

ROBERT A. ANGUEIRA, P.A.
6495 S.W. 24th Street
Miami, Florida 33155
Tel. (305) 263-3328
Fax (305) 263-6335
e-mail rachel@rabankruptcy.com

By _____
RACHEL L. AHLUM
Florida Bar No. 0091291

8